Johnson *v.* Kendall.

## Johnson *v.* Kendall.

In assumpsit, for not paying over money received by the defendant as a trustee, the plaintiff cannot introduce evidence of a loss of a part of the money through the neglect of the trustee to collect it seasonably.

Upon the question of such imputed negligence the trustee may show that before the plaintiff acquired an interest, the others beneficially interested directed him to pursue the course of delay which was attributed as negligence.

The person who causes a suit to be brought for his own benefit is the party in interest, though not nominally a party; and though he may not have the interest which he supposes he has in the subject of the suit, he is not a competent witness.

Evidence relating to the competency of a witness is addressed in the first instance to the court, but may in doubtful cases be ultimately submitted to the jury, and ought therefore to be competent evidence.

Assumpsit. The declaration was as follows: In a plea of the case for that said defendant, on the 21st day of July, A. D. 1838, at Nashua, in said county of Hillsborough, by his agreement in writing, under his hand of that date, admitted himself to be the holder of a note of two thousand dollars against the Second Baptist Society in Nashua, and payable to said defendant, on demand, with interest annually, bearing date February 23, A. D. 1837, with interest thereon paid until the 23d of February, A. D. 1838; and that said note was the property of certain persons, among

whom was the plaintiff, who had an interest in said note to the amount of two hundred and fifty dollars; and agreed by said writing to hold said note for the benefit of said plaintiff to the aforesaid amount of two hundred and fifty dollars, and to pay to said plaintiff, or his order, his just proportion of said note, whenever the same should be paid to him, said defendant. Now the plaintiff avers that said note has been paid to said defendant, and that his, the plaintiff's, just proportion thereof is the sum of three hundred and fifty dollars—yet, though often requested, &c.

The scrip or certificate declared on was signed by the defendant, and was in the words and figures following :

"250. I, Josiah Kendall, of Dunstable, Mass., hold a note against the Second Baptist Society in Nashua, dated February 23, 1837, for two thousand dollars, payable to me, or order, on demand, with interest annually, on which interest is paid up to February 23, 1838; which note is the property of certain individuals, and that James Johnson, of Milford, N. H., is the owner of two hundred and fifty dollars in said note. Now I agree with said Johnson to hold said note for his benefit to the amount of said two hundred and fifty dollars; and whenever payment thereof is made, I agree to pay over to said Johnson, or order, his just proportion of said note. Nashua, July 31, 1838."

On the back of said scrip was the endorsement, under the date of January 24, 1845, of two hundred and forty-three dollars and seventy-five cents, in part payment of principal and interest.

The plea was the general issue. It appeared in evidence that said Baptist Society, being in debt, Kendall and others advanced money to the amount of two thousand dollars, on the 23d of February, 1837 ; that instead of notes and mortgages being given to the several individuals for the amount by them respectively advanced, one note was taken for the amount of the whole sum advanced, run-

ning to said Kendall, or order, and a mortgage taken by him upon property of the society, to secure the payment of the same; that Kendall thereupon issued certificates, similar to the one now in suit, to those who had advanced money, in proportion to the sums loaned by each. One of these scrips was assigned to the plaintiff, who caused it to be returned to Kendall, and the scrip in suit was issued instead of it.

The plaintiff's counsel, in opening the case, stated that this suit was instituted for the benefit of John Cutter. He then introduced as a witness Calvin Cutter, who was objected to by the defendant on the ground that he was interested, and was the real plaintiff in the action. The defendant proposed to show the interest by evidence *aliunde;* and thereupon introduced evidence of declarations of the plaintiff on the record, tending to satisfy the court that Calvin and *not* John Cutter, was the party in interest. The plaintiff then offered to prove by Calvin that he had no interest. The court ruled that inasmuch as the defendant was endeavoring to establish his interest by evidence *aliunde,* it was not competent for the plaintiff to disprove that interest by the witness himself. The plaintiff then offered *John* Cutter to the court, to disprove the interest of Calvin. This was objected to by the defendant, but it appearing in that stage of the case that Calvin and not John was the party in interest, the court received the evidence; and being satisfied that said Calvin had no interest in the suit, permitted him to testify to the jury.

It appeared in evidence that the mortgaged property was sold for a sum insufficient to pay the note, and evidence was introduced by the plaintiff tending to show that there had been negligence or fraud in the management and sale of the property by the defendant, by means of which the scrip holders had become the losers. The defendant objected to the reception of this evidence, contending that under the declaration in this suit the plaintiff

could not recover on account of any loss occasioned by negligence or fraud on the part of the defendant, and that he was confined to the actual receipt of money by the defendant, as alleged in the declaration. The court overruled the exception and admitted the evidence.

The defendant, in order to disprove fraud or negligence on his part, offered to prove that at the time he consented to take the mortgage and hold it for the benefit of the persons interested therein, it was verbally agreed by the parties to the transaction at that time, that the interest in the mortgage should only be called for until a considerable time, and that the principal should lie as a permanent investment, until the mortgagor should have a reasonable time to pay the debt. But the court rejected the evidence.

It further appeared that the interest on said mortgage note had been paid to the defendant from February 23, 1837, to February 23, 1838, being $120.

The court, among other things, instructed the jury that a trustee was bound to act honestly, and with proper caution and care, and without negligence; and if they found that this defendant in the management of this fund had acted fraudulently, or so negligently as justly to make him chargeable for any loss sustained by reason of such fraud or negligence, the plaintiff could recover in this form of action for such loss. The court also instructed the jury that if they found that the sum of $120, which was paid to said defendant as interest on the mortgage note on the 23d of February, 1838, had not been accounted for to the holders of the scrip, the defendant was liable to the plaintiff for one eighth part thereof, with interest on the same.

The jury returned a verdict for the plaintiff, and the defendant moved to set the same aside and for a new trial, for supposed error in the foregoing rulings and instructions of the court.

*Farley*, for the defendant.

*Atherton*, for the plaintiff.

WILCOX, J. The declaration avers that the contract was to pay over to the plaintiff a certain proportion of the note for $2,000, which the defendant held against the Second Baptist Society in Nashua, whenever the same should be paid to the defendant. It avers that the note has been paid to the defendant, and that he has not paid to the plaintiff.

The evidence admitted is that a certain part of the note was not paid to the defendant, but that he so negligently conducted in regard to the note that it was lost. This evidence does not sustain the declaration, but makes a case altogether different. One goes upon the ground of payment to the defendant, and the other upon that of negligence to collect.

The case of *Hemmenway* v. *Hemmenway*, 5 Pick. 389, cited by the plaintiff's counsel, was not one like the present, of variance between the allegation and proof, but one in which the party was charged upon the ground that he had made the debt his own, by taking a note to himself and had denied all responsibility.

In *Fairbanks* v. *Blackington*, 9 Pick. 93, the declaration was for money had and received; but there the defendant had discharged the plaintiff's debt, and received a note in payment.

In 2 Esp. 210, the declaration was against an agent for selling and not accounting for proceeds; and it was held, that as the goods were sold on a credit, and the price not received by the agent, the plaintiff could not recover unless the delay in the payment was occasioned by the agent's neglect; but there the plaintiff's testator had notice of the terms of the sale.

In Peake's Cases 56, the sale was on terms of return or

sale, and no return, and an action for goods sold was held to lie. After the lapse of a reasonable time, it may be presumed that an agent has received the money, or the plaintiff may proceed against him for not accounting. 1 Stark. 224. But in the present case the proof is he had not received the money.

*Harrison* v. *Mack*, 10 Ala. 185, was a bill in equity against a trustee, who was held accountable for permitting the debtor to waste the trust fund. Its application to the present question, which relates to the application of evidence to the declaration, is not apparent from the abstract of the case which we have seen.

*Porter* v. *Blood*, 5 Pick. 54, was a question as to the statute of limitations, and whether the holder of a note had within a reasonable time sold the property of the maker, and applied its proceeds to the payment of the note. More than six years delay was held unreasonable, and the defendant had no right after six years to sell and apply the proceeds.

These cases come entirely short of sustaining a proposition that in an action against a trustee for not paying over money that he has received, the plaintiff may introduce evidence to show that through negligence the trustee has not received the money.

The plaintiff is not entitled to interest before the 23d of February, 1838. The contract, dated on the 31st of July, 1838, describes the note as for $2,000. It recites that interest has been paid on it to the 23d day of February, 1838, and that the plaintiff's interest in it is $250, for which sum the defendant undertakes to account to the plaintiff when paid.

The parol evidence of an agreement to suffer the principal sum due upon the note to remain unpaid, and that the interest alone should be collected, until a reasonable time for the mortgagor to pay the principal should have elapsed, was not offered to add to, control, or vary the

effect of the written contract. It was offered only upon a collateral matter, and to show, from the directions that had been given to the trustee, that his delay was not negligence. The question was, not whether the maker of the note was bound to pay it according to its terms, but whether the trustee who held it was guilty of a breach of trust towards a third person, beneficially interested in the note, merely because he did not enforce the payment of it according to its terms.

It is said that these directions were given to the defendant before the scrip was issued to the plaintiff, and by other persons, and that he knew nothing of it. But the plaintiff purchased an interest in an existing trust, and should be presumed to know its character and extent. At any rate, the terms upon which the trust was originally created, and upon which it still remained as to most of the persons interested, are admissible in a case of imputed negligence in the discharge of the trust.

The plaintiff's counsel stated that this suit was brought for the benefit of John Cutter. In the course of the trial the defendant attempted to controvert this fact, and to show that Calvin Cutter was the party really in interest, and offered evidence on that point. The plaintiff thereupon offered John Cutter, to prove that Calvin had no interest, and he was admitted to testify ; it appearing upon the evidence, as it then stood, that Calvin was the party and not John. But upon John's testimony being given, it appeared that Calvin had no interest.

The suit might have been brought by John and for him, although he might have been mistaken as to his interest in it, and in fact have had none. But he would still be liable for the costs, and interested in the result, because it was his suit in fact. Most clearly, therefore, he could not be admitted to testify that it was his property and not Calvin's, and thus to maintain his suit.

Even if, as the testimony stood, it was clear that he had

no interest, but that Calvin had, still, the moment that it appeared from his own testimony that he was interested, that testimony should have been rejected and laid out of the case. It is not said that it appeared from John's testimony that he was the party in interest, and that Calvin was not; yet such is the necessary inference, as the question was between the interest of John and of Calvin. But John Cutter was inadmissible without regard to his title to the matter in controversy, for the suit was his, and brought for his benefit.

But it is said that this evidence was addressed to the court upon a point to be decided by the court, and that the testimony of John did not go to the jury.

It is the constant and familiar practice of the court to receive the affidavits of parties upon collateral matters arising in the progress of trials; and when the evidence does not go to the jury, perhaps we can say that this is a matter always within their discretion.

In trials by jury, the preliminary proof of facts which determine the admissibility of any evidence that is offered, is, in the first instance, always addressed to the court, whose province it is to prevent, if reasonably possible, incompetent evidence from going to the jury.

For example, in the process of affiliation, the facts that determine the competency of the mother to testify are always settled by the court, and in no case, it is said, can they ever be passed upon by the jury. *M'Managil* v. *Ross*, 20 Pick. 104.

In *Harris* v. *Wilson*, 7 Wend. 57, the declarations of one were offered, the competency of which, depending upon the question whether he was a partner of the defendant, the court were held to have the exclusive power of deciding upon the weight of evidence bearing upon it.

In *Ackley* v. *Kellogs*, 8 Cow. 223, the same doctrine prevailed, and it was said that, as a necessary consequence, the admission of improper evidence in determining the pre-

liminary question, would not furnish just ground for set-
ting aside the verdict.   But that point did not arise in the
case, and the *dictum* cannot be unqualifiedly admitted to
be law.

In determining whether evidence of what a written doc-
ument contains is competent, the judge takes the party's
affidavit to prove its loss, and may perhaps examine in
the same manner persons who, not being parties to the
suit, have an interest in its result.   *Donelson* v. *Taylor*, 8
Pick. 391.

The competency of parol evidence to settle the terms of
a contract may sometimes depend upon the doubtful and
difficult question whether the parties reduced the contract
to writing.

The question of the interest of a witness is addressed
in the first instance to the court, and to be by them deter-
mined.   "If, however," says Greenleaf, "the question of
fact in any preliminary inquiry, is decided by the judge,
and the same question of fact afterwards recurs in the
course of the trial upon the merits, the jury are not pre-
cluded by the decision of the judge, but may, if they are
satisfied upon the evidence, find the fact the other way."
He also says that the judge may, in his discretion, submit
a difficult question of fact, determining the interest of a
witness, to the jury.   Gr. Ev., sec. 425.

In *Walker* v. *Sawyer*, 13 N. H. 191, the court had left to
the jury to decide a doubtful question, affecting the interest
of a witness, with directions to lay his testimony out of
the case, if they believed him interested, and that course
was sustained.

We conclude that evidence introduced to settle the
interest of a witness, is addressed to the court, to enable
them to determine that a *prima facie* case is or is not made.
But a *prima facie* case for the admission or exclusion of a
witness upon the ground of interest, does not differ from
any other *prima facie* case.   The court decide that the

other party must for the present treat the case as proved, and abide by it, unless advised to contest or avoid it. It is, after all, evidence that the jury may be required to pass on.

The rules for proving the interest of witnesses have been the subjects of discussion, and the existence of some rules regulating the manner of proof has been generally admitted in the cases in which such discussions have arisen.

It has not been the practice of courts to take the affidavits of parties to sustain the competency of their own witnesses, if the matter of fact to which the affidavits are offered is not such as the parties might in ordinary cases sustain by such proof; nor can a case be found in which a party on the record, or a party in interest, has been examined as a witness in court, for the purpose of disproving the interest imputed to his witness, disqualifying him as such.

The verdict must be set aside, and a

*New trial granted.*